# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RANDY TESCH,

                Plaintiff,

v.

                Case No. 22-CV-43-JPS

CITY OF RIPON,

                Defendant.

**ORDER**

## 1.    INTRODUCTION

On January 13, 2022, Plaintiff Randy Tesch ("Plaintiff") filed the present suit, alleging that Defendant City of Ripon ("Defendant") discriminated against him based on his disability, failed to accommodate his disability, and fostered a hostile work environment. *See* ECF Nos. 1, 7 at 1. On November 18, 2022, Defendant filed a motion for summary judgment. ECF No. 13. The motion is now fully briefed. ECF Nos. 19, 21, 26. For the reasons stated herein, the Court finds that Plaintiff is not a qualified individual with a disability under the Americans with Disabilities Act or the Rehabilitation Act, and consequently will grant Defendant's motion.

## 2.    RELEVANT FACTS[1]

### 2.1    Introduction to Plaintiff's Employment

Plaintiff worked for Defendant's Department of Public Works as a Department Laborer from September 1999 to October 6, 2019. The

---

[1]The parties submitted a stipulated statement of undisputed material facts. ECF No. 20. For purposes of summary judgment, the Court will adopt the stipulated facts with minor, non-substantive edits, and with internal citations omitted for brevity. Some of those agreed-upon facts are omitted as they are

Department is managed by Public Works Director Mike Ehrenberg ("Ehrenberg"), and its day-to-day operations are overseen by Supervisor Chris Neuens ("Neuens"). Plaintiff's last day of work for Defendant as a Department Laborer was July 29, 2019, but he was not officially terminated until October 6, 2019. The reason cited for his termination was his alleged inability to perform the essential functions of the position with or without accommodation.

### 2.2 Plaintiff's Medical History and Subsequent Accommodation

On December 9, 2015, Plaintiff sustained an injury to his right shoulder. This injury required rotator cuff surgery. On March 17, 2016, Plaintiff's physician advised him that he could return to work during his healing period on the condition that he be limited to sedentary work and that he lift no more than ten pounds. On June 9, 2016, Plaintiff's work restrictions were modified accordingly. Following his injury, Plaintiff was assigned light-duty work, in compliance with his work restrictions. It was Defendant's understanding during this time that Plaintiff's restrictions were of limited duration and that Plaintiff would once again be able to perform all essential functions of his employment after his healing period.

On September 15, 2016, Plaintiff was given permanent work restrictions, limiting him to medium work duty; a lifting restriction of 50 pounds; and a pushing, pulling, and carrying restriction of 25 pounds.

---

immaterial to the issue that the Court has determined is dispositive. Plaintiff submitted a statement of disputed facts, ECF No. 22, to which Defendant responded, ECF No. 25. Since the Court concludes that these facts are largely immaterial to the issue the Court has determined is dispositive, they are not included in their entirety here.

Defendant accommodated these restrictions because Plaintiff was able to perform most of the essential functions of a Department Laborer at that time. Indeed, in the following several years, Plaintiff was evaluated as "fully meeting the performance expectations of a Laborer" during mid-year and end of year performance reviews.

On February 5, 2019, Plaintiff sustained another work-related injury, again to his right shoulder. He sought immediate medical care and was diagnosed with a right shoulder sprain and bruising to the right elbow. As a result of this injury, he was deemed totally incapacitated. On the same day of his injury, Defendant gave Plaintiff a Modified Work Statement, and Plaintiff completed it. Plaintiff's initials on that document indicated that he understood that he was required to notify Defendant if he had difficulties performing any of his assigned tasks and that he was prohibited from performing tasks that violated his work restrictions.

On February 7, 2019, Plaintiff's physician authorized him to return to work on the condition that he be limited to light duty, consisting of the occasional lifting of no more than twenty pounds, frequent lifting of no more than ten pounds, and constant lifting of no more than four pounds. Plaintiff was also limited to occasional overhead reaching, forward reaching, climbing ladders, squatting, kneeling, and crawling, and was limited to frequent gripping, punching, pushing, pulling, fine manipulation, and forceful gripping/twisting with the right arm. Several days later, on February 11, 2019, Plaintiff's restrictions were modified to prohibit climbing ladders and crawling, and to further restrict gripping, punching, pushing, pulling, fine manipulation, and forceful gripping/twisting with the right arm from frequent to occasional. At the same time, restrictions involving bending his neck were lifted. Plaintiff was

further prohibited from operating heavy machinery and trucks. On March 11, 2019, these restrictions were renewed except that the prohibition on operating heavy machinery and trucks was lifted.

Throughout these months following Plaintiff's second right-shoulder injury in February of 2019, Defendant accommodated Plaintiff by creating non-essential, light duty tasks for him to perform. On February 14, 2019, Defendant, apparently believing the tasks could be completed with one arm, assigned Plaintiff to sweep and mop the office, bathroom and breakroom, and to scrub the sink and toilet in the bathroom. Plaintiff scrubbed the sink and toilet as assigned but did not sweep or mop because his work restrictions did not allow him to do so. Plaintiff returned to his physician after receiving this work assignment, and his physician added handwritten instructions to the work order which prohibited Plaintiff from sweeping or mopping.

On February 18, 2019, Plaintiff completed an additional Modified Work Statement at Defendant's request. Again, Plaintiff initialed each paragraph therein, indicating that he understood that he was required to notify Defendant if he had difficulties performing any of his assigned tasks and that he was prohibited from performing tasks that violated his work restrictions. The Modified Work Statement additionally required Plaintiff to maintain effective communication with Defendant throughout the period of recovery and to cooperate with Defendant in identifying suitable work assignments that would comply with Plaintiff's restrictions.

On March 1, 2019, Plaintiff's physician completed a Functional Ability Form at the request of Defendant. Therein, Plaintiff's physician imposed even more limiting work restrictions, including a ten-pound lifting and carrying restriction and a prohibition on reaching overhead or

forward, gripping, pinching, pushing, pulling, forceful gripping, twisting, or manipulation with the right arm. Defendant continued to assign Plaintiff light duty tasks in light of the restrictions. It also created additional light duty tasks for Plaintiff to complete, such as organizing nuts and bolts, copying and scanning work, organizing cemetery cards, and conducting traffic counts. These tasks were not always readily available as they did not need to be completed on a regular basis.

On April 2, 2019, Plaintiff's physician contacted an attorney on Plaintiff's behalf because Defendant staff members were calling the physician's office and yelling at the nurses regarding Plaintiff's work restrictions.

On April 15, 2019, Plaintiff's work restrictions were updated to light-medium duty. The update enabled Plaintiff to lift greater weights at higher frequencies and allowed for occasional crawling and frequent gripping, pinching, pushing, pulling, fine manipulation, and forceful gripping and twisting with the right arm. On June 10, 2019, the restrictions were again modified to allow Plaintiff to drive small lawn mowers, but prohibited him from large equipment operation.

Between February 6, 2019 and August 19, 2019, Plaintiff took 278.5 hours of sick leave or vacation due to his physical limitations. During that same period, he worked 919.09 hours. Other of Defendant's employees had to increase their workloads to accommodate for Plaintiff's time off.

### 2.3 Violation of Work Restrictions to Complete Work Assignment

In spring of 2019, Defendant assigned Plaintiff to work on a park pavilion project for several weeks. It required Plaintiff and another employee to remove old cement and plaster on the walls of the pavilion,

replaster, and paint the pavilion. Plaintiff performed the assignment by removing plaster, replastering, and scraping off paint. He exceeded his work restrictions to complete the project, performing kneeling and reaching and assisting in lifting 80-pound cement bags. Plaintiff does not recall whether he communicated to Defendant any concerns of completing this assignment and regarding his restrictions. He also does not recall whether he asked Defendant to assign another employee to the project or whether he requested accommodation to assist with the project within the confines of his restrictions.

### 2.4    Performance Reviews

In mid-2018, Plaintiff received a performance review. He received a rating of partially meets expectations. The review reflected that Plaintiff was "always the last one to get going in the morning."

In February of 2019, Plaintiff received his 2018 end-of-year review. That review indicated that Plaintiff fully met key expectations. At the time of this review, Ehrenberg was implementing a merit-based raise system. Some, but not all, Public Works Departments employees received such merit-based raises based on their 2018 end-of-year reviews. If employees "had some work to do," they did not receive such a raise. Plaintiff did not receive such a raise. Those who did not receive a merit-based raise based on their 2018 end-of-year review, such as Plaintiff, would be reevaluated in mid-2019 and would receive a merit-based raise at that time if they met the criteria.

On June 1, 2019, Ehrenberg completed Plaintiff's annual performance review form. He characterized Plaintiff as "Does not Fully Meet Expectations." He commented that Plaintiff was less productive than other employees, that there was no sense of increasing his productivity over

the last six months, that he was uninterested in self-improvement, and that he tried to drag the team in the wrong directions. He further wrote that Plaintiff fell below the standard of being safe because he was injured on the job. Ehrenberg attributed this injury to Plaintiff being inexcusably unaware of his surroundings after being instructed to spread salt due to melting and freezing ice on the sidewalk. Finally, he noted in the review that Plaintiff had declined in work performance since his injury, that his attitude had changed, and that he had fallen below expectations. This review was not administered in person, and it was not signed.

### 2.5    Independent Medical Examination

On June 26, 2019, Dr. Brian Harrison ("Harrison") conducted an independent medical examination of Plaintiff's injury. He concluded that it would be impossible for Plaintiff's rehabilitation to return him to the level of function required for the position and noted that Plaintiff had probably not been functioning at the level required for the position for quite some time. Harrison recommended a functional capacity evaluation be completed to measure Plaintiff's physical capacity and to determine proper job duties. In light of this recommendation, Defendant requested that Plaintiff undergo a functional capacity examination. Plaintiff's physician advised him that he likely would not pass such an examination. Plaintiff did not undergo the examination.

### 2.6    Picnic Table Assignment

On July 26, 2019, Plaintiff met with Neuens and Ehrenberg to discuss a work assignment. The assignment was to sand picnic table boards, each weighing approximately 38 pounds. Plaintiff was provided a printed copy of instructions for the assignment. The instructions provided that Plaintiff should use his left arm to place the picnic table boards on barricades and

that he should ask someone in the shop to help lift them. The task of sanding the boards required the use of both hands to lift them. The instructions also noted that if Plaintiff needed to sand the reverse side of the board, that he should use his left arm and request assistance to turn the boards over. Lastly, the instructions stated that Plaintiff should put the finished boards on a pallet using his left arm and that he should ask someone in the shop for assistance putting them on the pallet.

Plaintiff, Ehrenberg, and Neuens all reviewed the instructions together, and Plaintiff signed the instructions to verify that he had reviewed them with Ehrenberg and Neuens. Plaintiff was assigned to complete this assignment on July 29, 2019.

On July 29, 2019, Plaintiff informed Neuens that he would not lift the boards as it exceeded his work restrictions. After so informing Neuens, Plaintiff proceeded to work on the boards after they were lifted by someone else in the shop.

Neuens called Ehrenberg to inform him that Plaintiff would not complete the assignment. Ehrenberg said he would call Tesch back. Ehrenberg called the City Administrator, Lori Rich ("Rich"), to discuss the issue and to advise that the Department was unable to provide work for Plaintiff that complied with his restrictions. Rich instructed Ehrenberg to have Plaintiff go home, and Ehrenberg communicated that to Neuens, who sent Plaintiff home. Plaintiff was sent home before having sanded any picnic table boards. He never worked again as a Department Laborer for Defendant.

### 2.7    Completion of Healing Period

On August 12, 2019, Plaintiff's physician performed a final medical examination of Plaintiff's right shoulder and determined that he had

Case 2:22-cv-00043-JPS    Filed 01/25/23    Page 8 of 26    Document 28

reached the end of the healing period. The physician assigned Plaintiff with a 32% partial disability at the right shoulder and issued permanent work restrictions, limiting lifting to no more than twenty pounds occasionally, no more than ten pounds frequently, and no more than four pounds constantly. The permanent restrictions also allowed only occasional squatting, kneeling, crawling, climbing a ladder, and reaching overhead and forward with the right arm. His permanent restrictions forbade any activity that would require use of both arms.

Plaintiff provided these permanent restrictions to Rich in person but did not communicate with anyone else associated with Defendant regarding how to continue his employment within his work restrictions. He did not request to be assigned to any specific tasks. Indeed, at no point from the time of his injury on February 5, 2019 to the time of his termination on October 6, 2019 did he request any accommodation from Defendant.

### 2.8 The Department Laborer Job Generally

According to its job description, the requirements for Department Laborers are the following: (1) ability to perform arduous manual labor on a regular basis; (2) ability to accept and follow directions; (3) basic mathematical skills; (4) ability to work from a ladder at heights greater than four feet; (5) ability to read a tape measure; (6) ability to safely operate small hand and power tools, equipment, light and medium snow removal equipment, and motor vehicles; (7) ability to communicate effectively, both orally and in writing; (8) ability to establish and maintain effective working relationships with City officials, fellow employees, patrons and members of the public; and (9) ability to maintain regular and dependable attendance on the job, including attendance and job performance for possibly prolonged periods of time when called out on short notice due to weather

conditions, emergencies and similar situations of public necessity. Department Laborers and mechanics regularly substitute and reassign tasks among themselves to accomplish work orders.

The Department Laborer job description also provides examples of typical work: those requiring a considerable amount of physical activity, including walking, standing, kneeling, bending, crouching, reaching, climbing, digging and scooping with a shovel, raking, and shoveling snow. It provides further that Department Laborers must be able to transport themselves to and from work sites, lift 20 pounds frequently and repeatedly,[2] lift up to 50 pounds occasionally and as needed, possess coordination and dexterity necessary to physically access and maneuver on rough and irregular terrain, physically enter and exit confined spaces such as utility vaults, and work from a ladder at heights greater than four feet and work from a lift at heights greater than 20 feet.

## 2.9 Permanent Restrictions' Impact on Ability to Perform Department Laborer Functions

Plaintiff's permanent work restrictions precluded him from performing some, but not all, of the functions of a Department Laborer. The restrictions prevented him from reaching overhead and forward more than occasionally, which precluded him from shoveling snow, lifting manhole covers, cutting and trimming trees, performing sewer repair, and working from a ladder or mechanical lift with both arms. They also precluded him from lifting more than twenty pounds occasionally, so he could not meet the job's requirements of occasionally lifting up to 50 pounds unless an

---

[2]Plaintiff estimates that he spent only "5% of [his] time as a Laborer performing work that required [him] to lift" objects weighing more than twenty pounds. ECF No. 23 at 5.

accommodation could be made that would allow him to use only his left arm to carry heavy weights.

Defendant accordingly had to allocate some additional tasks amongst the rest of its employees. For example, it had to reallocate snowplow operation responsibilities during the winter of 2019 due to Plaintiff's restrictions.

The essential functions Plaintiff was able to continue to perform included driving vehicles like dump trucks, payloaders, skid loaders, sweeper, trucks for blacktopping, trucks for crack sealing, garbage trucks, and lawnmowers. Plaintiff claims that in various general areas of work, Department Laborers are not required to lift more than twenty pounds. ECF No. 22 at 2.[3] He also claims that in the event that his work required him to lift items weighing more than twenty pounds, that he could do so with his left arm or alternatively have a co-worker do so. *Id.*

### 2.10 Post-Permanent Restrictions Proposal

On August 19, 2019, Rich proposed an agreement to Plaintiff which would allow him to maintain paid employment through October 6, 2019, at which time Plaintiff would become eligible for accrued vacation payout. The proposal also would allow Plaintiff to retire as a fully vested beneficiary of Defendant on October 6, 2019. Plaintiff did not accept the

---

[3] In support of Plaintiff's assertion that the area of leaf removal, for example, did not require Department Laborers to lift items weighing more than twenty pounds, Plaintiff cites to his declaration. ECF No. 22 at 2 (citing ECF No. 23 at 2, Tesch Decl., ¶¶ 16–17). But his assertion there that he "did not need to lift more than 20 pounds with the right arm during leaf removal" does not equate to the proposition that Department Laborers in general did not lift items weighing more than twenty pounds for leaf removal.

proposal. Defendant nevertheless continued to pay Plaintiff his full-time wage through October 6, 2019.

On October 7, 2019, Plaintiff and Rich met to discuss the proposal. Plaintiff again stated he would not accept the agreement. Defendant accordingly terminated his employment as of October 6, 2019 on the ground that he could not perform the essential functions of the position with or without accommodation.

## 3. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005). Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of

Case 2:22-cv-00043-JPS   Filed 01/25/23   Page 12 of 26   Document 28

material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). But simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (internal quotation omitted).

## 4. ANALYSIS

Plaintiff brings suit under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Rehabilitation Act of 1973, as amended. ECF No. 1 at 1. Defendant argues in support of its motion for summary judgment that Plaintiff was not a qualified individual for purposes of these Acts because he was not able to perform the essential functions of his job. ECF No. 19 at 2. The Court agrees with Defendant for the reasons stated herein, and accordingly will grant Defendant's motion.

The employment provisions of the ADA only protect qualified individuals with disabilities. *Hamm v. Exxon Mobil Corp.*, 223 Fed. App'x 506, 508 (7th Cir. 2007). The same is true of the Rehabilitation Act. *Castro v. Ill. Dep't of Corr.*, No. 15-cv-00707-MJR, 2015 U.S. Dist. LEXIS 105205, at *8 (S.D. Ill. Aug. 11, 2015) (noting that with one exception not applicable to the present case, the elements of an ADA and Rehabilitation Act claim are identical). An individual is considered "otherwise qualified" if he can perform the essential job functions with or without assistance of a reasonable accommodation. *Hamm,* 223 Fed. App'x at 508; 42 U.S.C. § 12111(8). The plaintiff bears the burden of proof in demonstrating this prerequisite. *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001).

"Whether an individual is a 'qualified individual with a disability' is a two-part inquiry." *Hamm*, 223 Fed. App'x at 508 (internal citation omitted). First, the court considers "whether the individual satisfies the

Case 2:22-cv-00043-JPS   Filed 01/25/23   Page 13 of 26   Document 28

prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, license, etc." *Id*. The parties do not dispute this first element of the inquiry. *See* ECF No. 21 at 6–7 ("The City does not dispute that Tesch satisfies the pre-requisites for the position, since he performed them for over twenty years . . . .").

"Second, if the individual does satisfy the position's prerequisites, we 'consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *Hamm,* 223 Fed. App'x at 508 (internal citation omitted). It is this latter element that the parties dispute. The question is therefore whether Plaintiff was able to perform the essential functions of the Department Laborer at the time of his termination. *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 690 (7th Cir. 2020) (noting that the plaintiff's ability to perform the essential functions of the job is examined as of the time of the adverse employment decision at issue).

That question implicates another. What are the essential functions of the Departmental Laborer job? "Essential functions are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" *Vargas v. Dejoy*, 980 F.3d 1184, 1188 (7th Cir. 2020) (quoting 29 C.F.R. § 1630.2(n)(1)). "Whether a function is essential to the position is a question of fact, resolved by 'consider[ing] the employer's judgment, including written job descriptions, as evidence.'" *Id.* (internal citation omitted). Courts also look to "the reality on the ground: the consequences of not requiring the employee to perform the function, the amount of time an employee actually spends performing the function, and the experience of those who previously or currently hold the position." *Tonyan,* 966 F.3d at 688 (internal citation omitted).

The amount of time devoted to a particular function is not irrelevant. *Id*. However, the Seventh Circuit has held that a function need not encompass the majority of an employee's time, or even a significant quantity of time, to be considered essential. *Basith v. Cook County*, 241 F.3d 919, 929 (7th Cir. 2001). Additionally, a job function may be considered essential "because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. §1630.2(n)(2)(ii).

The Court will begin with consideration of the job description of the Department Laborer. The parties do not dispute that it lists as required skills the "ability to perform arduous manual labor on a regular basis," the "ability to work from a ladder at heights greater than four feet," and the "ability to safely operate small hand and power tools, equipment, light and medium snow removal equipment, and motor vehicles." ECF No. 20 at 1–2. The job description provides that "[j]ob duties require a considerable amount of physical activity, including walking, standing, kneeling, bending, crouching, reaching, climbing, digging and scooping with a shovel, raking, and shoveling snow." *Id*. at 2. It states further that Department Laborers must have the ability to "lift 20 pounds frequently and repeatedly and lift up to 50 pounds occasionally and as needed," *id*, and that they must also possess the "coordination and manual dexterity necessary to physically access and maneuver on rough and irregular terrain" and be able to "physically enter and exit a confined space such as sanitary manholes or utility vaults." ECF No. 16-1. The description contemplates that some of these physical activities can be expected to last for "prolonged periods of time." *Id*.

In August of 2019, Plaintiff's physician imposed permanent work restrictions which prohibited Plaintiff from lifting any more than twenty pounds occasionally and ten pounds frequently. ECF No. 20 at 10. The permanent restrictions also allowed only occasional squatting, kneeling, crawling, climbing a ladder, and reaching overhead and with his right arm. *Id*. These restrictions prevented Plaintiff from performing duties such as shoveling snow, lifting manhole covers, cutting and trimming trees, and performing sewer repair. *Id*.[4]

Clearly, Plaintiff's permanent work restrictions implicated a great deal of the duties for which Department Laborers are responsible. Plaintiff concedes that various of the factors the Court may consider support the conclusion that "performing arduous manual labor on a regular basis is an

---

[4]An independent medical examination performed in July of 2019 resulted in the examining physician's conclusion that the physical requirements outlined in the Department Laborer job description likely

> exceed[ed] Mr. Tesch's physical capacity, even prior to this currently claimed work injury; and particularly if the permanent restriction he spoke, of [sic] a 25-pound lifting limit due to his prior right shoulder injury and surgery, applies. The job function demands included 50-pound lifting and carrying for removal of snow from roadways and sidewalks in terms of salt banks; 25-pound lifting and carrying and pushing with two hands 50-pound loads to patch driving surfaces; lifting and carrying 75 pounds with pushing 70 pounds and pulling 100 pounds for cutting and trimming trees; two-handed lift and carry of 94 pounds for curb and concrete repair; and two-handed lifting of up to 100 pounds for sewer repair. Building maintenance required climbing occasionally.

ECF No. 16-17 at 6. The examining physician wrote further that "I believe these [requirements] have exceeded Mr. Tesch's abilities for a long time, given his overall health, as well as the prior right shoulder injury in approximately 2016. I consider it impossible for his rehabilitation following the February 5, 2019 work injury to return him to this level of function, which he probably has not had for a long time." *Id.* at 13.

essential function of the Laborer position." ECF No. 21 at 8. The Court concludes that regularly performing arduous manual labor is, indeed, an essential function of a Department Laborer. No reasonable juror could find otherwise. The Court further concludes that without accommodation, Plaintiff would be unable to perform that essential function.

But Plaintiff may still constitute a qualified individual for purposes of the ADA if he can perform the job's essential functions with a reasonable accommodation. "[A] worker who cannot do the job even with a reasonable accommodation has no claim under the ADA . . . . [O]ur ADA and Rehabilitation Act jurisprudence requires that . . . [a plaintiff] must prove that she can perform the essential functions of [her job] with or without reasonable accommodation." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). Plaintiff notes that during his tenure, there were several other Department Laborers who "assisted with the five general areas of maintenance, all of whom performed or could assist Tesch in performing arduous manual labor on a daily basis." ECF No. 21 at 9. Such was the case when Plaintiff was assigned, along with another employee, to restore a pavilion, as well as when Plaintiff was assigned to lift picnic table boards as part of their restoration. *Id.* at 9–10. In both instances, Defendant accommodated Plaintiff's physical restrictions by instructing him to accomplish heavy lifting and moving of objects only with the assistance of another employee.

"Job restructuring" is one of the accommodations that an employer must consider. *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014) (internal citation omitted). "If a *minor* adjustment in the work duties of a couple of other employees would have enabled the plaintiff despite her disability to perform the essential duties of her job . . . [then] the [defendant's] refusal to consider making such an adjustment was

unlawful." *Id.* (emphasis added). Such minor adjustments are "reasonable" accommodations. *Id.* At the same time, however, "[e]mployers need not reshuffle staff and resources if doing so would require reallocating an essential function from the plaintiff to another worker." *Vargas*, 980 F.3d at 1189. EEOC guidance provides that "job restructuring" includes modifications such as "reallocating or redistributing *marginal* job functions that an employee is unable to perform because of a disability; and altering when and/or how a function, essential or marginal, is performed." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 290 (7th Cir. 2015) (internal quotation omitted) (emphasis added). "[T]he EEOC guidance makes clear that '[a]n employer never has to reallocate *essential* functions as a reasonable accommodation . . . .'" *Id.* (internal quotation omitted) (emphasis added).

Requiring another member of Defendant's staff to be available to either assist Plaintiff with, or perform in Plaintiff's place, the heavy lifting, carrying, climbing, snow shoveling, snow plow operating, tree cutting and trimming, sewer maintenance and repair, and ladder and mechanical lift work requiring two arms regularly required of a Department Laborer goes beyond a "minor adjustment in the work duties of a couple of other employees . . . ." *Kauffman*, 769 F.3d at 963. Such an accommodation is more akin to "reallocating an essential function from the plaintiff to another worker." *Vargas*, 980 F.3d at 1189.

Plaintiff argues that in the event that he had to, for example, lift more than twenty pounds in order to complete a task, he could do so with his non-injured arm. ECF No. 21 at 10.[5] But even that ability is qualified—the

_____

[5] This contention is also contradicted by other evidence in the record. For example, while Plaintiff claims to maintain this ability, it is undisputed that an independent examining physician in June of 2019 recommended that Plaintiff

item Plaintiff would need to lift or carry would need to be something like a bucket or bag, rather than a more cumbersome item like a picnic table board. ECF No. 15-1 at 20; ECF No. 26 at 4. And there would still remain various essential functions of his job that he simply would not be able to accomplish one-armed and which would require either the assistance of another employee or reallocation of the task altogether. Again, examples of such tasks include shoveling snow, performing two-armed work on ladders or mechanical lifts, cutting and trimming trees, lifting manhole covers for sewer work, and lifting or carrying heavy, cumbersome items, among others. *See* ECF No. 15-1 at 20 (conceding that lifting picnic table boards required the use of two arms). This conclusion is bolstered by the June 2019 medical examination in which the examining physician concluded that the job requirements of a Department Laborer "exceeded [plaintiff's abilities" and likely had for a "long time." *See supra* n.4 and accompanying text.

In *Peters v. City of Mauston*, the Seventh Circuit affirmed the district court's conclusion that the heavy lifting from which the plaintiff was restricted constituted an essential function of his job. 311 F.3d 835, 845 (7th Cir. 2002). That case bears significant similarity to that presently before the Court. The plaintiff there worked for the City of Mauston in Public Works

---

undergo a functional capacity evaluation to measure Plaintiff's then-current physical capacity and workability, and that Plaintiff declined to undergo such an evaluation in light of his own physician's opinion that he likely would not pass such an examination. ECF No. 20 at 7–8. And while Plaintiff testified in his deposition that he had the capacity to lift up to 100 pounds, to push up to 70 pounds, and to pull up to 100 pounds with only his left arm, ECF No. 15-1 at 22, those assertions are belied by Plaintiff's statements regarding his own health to the independent examining physician in June of 2019. *See* ECF No. 16-17 at 2 and 6 (indicating having experienced as a result of his most recent shoulder injury swelling in the neck, trouble swallowing, fatigue and weakness, and dizziness, among other symptoms).

Case 2:22-cv-00043-JPS   Filed 01/25/23   Page 19 of 26   Document 28

as an operator, which required him to use construction equipment, lift heavy objects, remove snow and ice from streets and sidewalks, trim trees and cut brush, perform maintenance on equipment, and excavate trenches, among other tasks. *Id*. at 839. Prior to his termination, the plaintiff there (just like Plaintiff in the present action) suffered two work-related shoulder injuries. *Id*. The plaintiff there had stated that "if the lifting required by the job became too heavy, someone would probably have to help him." *Id*. at 842. In other words, he, like Plaintiff, expected that his employer would accommodate him by instructing other employees to assist him.

In concluding that heavy lifting was an essential function of the job, the Seventh Circuit there wrote that even the plaintiff admitted that "heavy lifting is required at times, and his argument that such lifting is infrequent does not preclude it from being an essential function of the job." *Id*. at 845. *See* ECF No. 15-1 (Plaintiff Depo.) at 17–18 (conceding that lifting and carrying an occasional 94 pounds, and pulling or pushing an occasional 50 pounds, were functions expected of a Department Laborer) and at 4 (conceding that patching roads, cutting trees, repairing sewers and curbs, maintaining buildings, and removing snow were performed occasionally in the position); *see also* ECF No. 21 at 100 ("Tesch estimates he spent very little time performing work that required him to lift objects that weighed more than twenty pounds . . . ."). Plaintiff's contention that heavy lifting is infrequently required does not mean that heavy lifting is not an essential function of the job.

The court in *Peters* further wrote that the plaintiff's requested accommodation—that "someone else do the heaviest lifting for him if he could not handle it"—was unreasonable. *Id*. It was unreasonable because it "requires another person to perform an essential function of" the plaintiff's

job. *Id.* This concept has been well established in the Seventh Circuit. *See Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (noting that "[t]he job that [plaintiff] would like would be a job in which another worker does the sorting, then gives [plaintiff] the mail to case, and then when [plaintiff] has done that carries the cases to the truck, and [plaintiff] makes just curbside deliveries," and that such an accommodation was unreasonable); *Nunn v. Ill. State Bd. of Educ.*, 211 Fed. App'x 502, 505 (7th Cir. 2006) ("The record shows that [plaintiff's] field duties had to be farmed out to other employees, and requiring another person to perform an essential function of a disabled employee's job also is not a reasonable accommodation."); *Tonyan*, 966 F.3d at 689; *Majors v. GE*, 714 F.3d 527, 534 (7th Cir. 2013) (noting that the plaintiff's only proposed accommodation—to have a handler lift heavy objects for her—was unreasonable); *Gonzalez v. City of Hammond,* No. 2:17-CV-252-TLS, 2022 U.S. Dist. LEXIS 25828, at *15 (N.D. Ind. Feb. 14, 2022) (rejecting plaintiff's argument that having a co-worker assist him when he needed to lift a heavy object was a reasonable accommodation); *James v. Hyatt Regency Chi.*, 707 F.3d 775, 783 (7th Cir. 2013) (holding that a proposed accommodation under which someone else would do the heaviest lifting for Plaintiff was unreasonable). Like in those cases, Defendant had to "allocate additional tasks to the" other employees to make up for Plaintiff's inability to perform them. ECF No. 14 at 3.

Plaintiff attempts to convince the Court that this case should instead be analogized to *Kauffman v. Petersen Health Care VII, LLC,* 769 F.3d 958 (7th Cir. 2014). *See* ECF No. 21 at 11. But that case is materially distinguishable. There, the plaintiff—a hairdresser for a nursing home—suffered a prolapsed bladder and so was rendered unable to fulfill her duty of wheeling residents to and from the beauty parlor. *Kauffman*, 769 F.3d at 959–

60. Her job had required her on Mondays and Tuesdays to "wheel residents one by one in their wheelchairs from their rooms to the nursing home's beauty shop, do their hair, then wheel them back to their rooms." *Id*. at 959. This wheeling duty accounted for less than two hours of the plaintiff's total work time per week. *Id*. at 962. The Seventh Circuit framed the issue as whether "her inability to wheel could reasonably be accommodated by assistance from other staff." *Id*. at 961. It answered that question in the affirmative, noting that it would not disrupt the operation of the employer to assign another member of the staff to the wheelchair duty because it was "so small a part" of the plaintiff's job that it had an essentially "negligible" effect on the employer. *Id*. at 962.

In *Kauffman*, the plaintiff was unable to perform only a single task that her job required—pushing wheelchairs. Here, Plaintiff is unable to perform a variety of tasks—again, they include shoveling snow, performing two-armed work on ladders or mechanical lifts, cutting and trimming trees, and lifting or carrying heavy, cumbersome items. It is not a matter of having a single employee cover a single task during a discrete portion of the week. These various tasks cannot reasonably be considered "so small a part" of Plaintiff's job requirements as to have an essentially "negligible" effect on Defendant. Plaintiff is unable to perform a significant portion of the essential functions of a Department Laborer, requiring allocation of these tasks to various other employees. ECF No. 14 at 3.

The instant case is also distinguishable from *Miller v. Illinois Department of Transportation*, 643 F.3d 190 (7th Cir. 2011), which Plaintiff argues is analogous. ECF No. 21 at 22. There, the Seventh Circuit concluded that having another member of the bridge crew perform a certain task from which the plaintiff was restricted was a reasonable accommodation because

it was "the normal course for individual members of the bridge crew to substitute and reassign tasks among themselves according to individual abilities, preferences, and limitations." *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011). The plaintiff's request that his coworkers cover that specific essential function for him was reasonable because "he was asking only that he be allowed to work as he had worked successfully for several years." *Id.* at 197.

Again, while in *Miller* the plaintiff's disability prevented him from performing a single task, here Plaintiff is unable to perform many. And while it could be said in *Miller* that allowing another employee to handle that specific task was nothing out of the ordinary, it cannot here be said that allowing other Department Laborers to take over the many tasks from which Plaintiff is restricted is equivalent to how "he had worked successfully" in the past. *Id.; see also EEOC v. AutoZone, Inc.*, 809 F.3d 916, 923 (7th Cir. 2016) ("[T]he evidence presented does not show a distribution of labor system in which the 'normal course' was for [plaintiff] to substitute and reassign discrete tasks involving lifting certain heavy items and in exchange other employees did not do discrete tasks that they were unable to do."); *Schmeichel v. Installed Bldg. Prods., LLC*, No. 16-CV-410-FPG, 2018 U.S. Dist. LEXIS 199657, at *23 (W.D.N.Y. Nov. 26, 2018) ("[T]he *Miller* court recognized that 'task reassignments within a job can be unreasonable in situations where the reassigned task is an essential function of the job.' . . . That doctrine did not apply in *Miller* because a reasonable jury could conclude that work from heights was *not* an essential function of each individual crew member . . . . But here, unlike in *Miller*, the requested accommodation involves the proposed reassignment of an essential function, *i.e.*, lifting."). Indeed, more recent Seventh Circuit caselaw on this

theme has clarified that while "*Miller* remains good law, [] context matters." *Tate v. Dart*, 51 F.4th 789, 797 (7th Cir. 2022).

Lastly, *Miller* is materially distinguishable because there the Seventh Circuit concluded that reassignment of the task to another member of the bridge crew was reasonable because "a reasonable jury could find that such work was not an essential function of the job . . . ." *Miller*, 643 F.3d at 197. The same is not true here. *See Paul v. CSK Auto, Inc.,* No. 14-CV-12484, 2015 U.S. Dist. LEXIS 105001, at *14–15 (E.D. Mich. Aug. 11, 2015) ("Importantly, the Seventh Circuit in *Miller* is in accord with the Sixth Circuit, holding that 'task reassignments within a job can be unreasonable in situations where the reassigned task is an essential function of the job . . . . Because the disputed functions in this case are essential to [plaintiff's] position, [his] argument that these functions can be exchanged is unavailing.").

That being the case, Plaintiff has put forward no evidence "sufficient to allow a fact-finder to decide that []he is a qualified individual." *Majors*, 714 F.3d at 534. Plaintiff could not perform the essential functions of the Department Laborer on his own, and "he put forth no reasonable accommodation that would allow him to do so." *Vargas*, 980 F.3d at 1190. He was therefore not a qualified individual under either the ADA or the Rehabilitation Act. "[P]laintiff had the option to show that []he was qualified to perform the essential functions of another vacant position," but he has not done so. *Conners v. Wilkie*, 984 F.3d 1255, 1262 (7th Cir. 2021). While the record contains some evidence on that point,[6] Plaintiff's brief

---

[6] Q: So there are individuals in the parks department who are exclusively assigned to that lawn care—

A: Uh-huh.

Q:—project from [M]arch to November-ish?

Case 2:22-cv-00043-JPS   Filed 01/25/23   Page 24 of 26   Document 28

makes no argument on the issue. ECF No. 21 at 20 (stating only that a reasonable accommodation may include reassignment to a vacant position, but providing no argument that such a reassignment was a viable option here).

Accordingly, "there remain[s] nothing for the jury to decide." *Vargas,* 980 F.3d at 1190. The Court need not, therefore, address the parties' remaining arguments.[7]

**5.     CONCLUSION**

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment, ECF No. 13, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

---

A: Uh-huh.

Q; Was Mr. Tesch ever considered for that?

A: Those positions were filled by other individuals.

Q: Did you ever consider moving those individuals from that to place Mr. Tesch in that duty?

A: No.

ECF No. 15-2 at 12.

[7] *See Majors,* 714 F.3d at 535 ("This record won't allow a finding that Ms. Majors was a qualified individual, so whether the discussion between GE and Ms. Majors was sufficiently interactive is immaterial.").

Case 2:22-cv-00043-JPS   Filed 01/25/23   Page 25 of 26   Document 28

Dated at Milwaukee, Wisconsin, this 25th day of January, 2023.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge